**APPROPRIATION BY OHIO TURNPIKE COMMISSION PROPERTY OF FIEHLER et, In re: OHIO TURNPIKE COMMISSION, Appellant, v. FIEHLER et, Appellees.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3642. Decided March 23, 1955.

Frank C. Dunbar, Jr., Columbus, Myron E. Reinman, Youngstown, for appellant.

W. O. R. Johnson, Nils P. Johnson, Youngstown, for appellees.

## OPINION

By PHILLIPS, PJ.

A jury in the court of common pleas in this appropriation case returned a verdict for appellees, called landowners, for $8,000.00 for land taken, $1500.00 for buildings, and $10,000.00 for damages to the residue of the landowners property. The trial judge entered judgment upon the jury's verdict, and from that judgment the commission appealed to this court on questions of law.

At the time of appropriation landowner Fiehler owned 32.52 acres of land situated on the southeast corner of the intersection of Ohio State Routes 46 and 62, north of the village of Canfield.

The commission appropriated a triangular shaped parcel of 1.8 acres situated on the south-westerly portion of landowners' farm, and also a strip of their land thirty-two feet wide, which parallelled and abutted on Ohio State Route 46 from such triangle to Route 62.

A one story frame house, a one story cinder block factory building, and a one story frame restaurant building, which latter was the only building taken, were situated on landowners' land at the time of the appropriation, leaving a residue of 29.93 acres of owners land. Also thirty-three feet of owners land fronts on Ohio State Route 62 and four hundred ninety-seven feet fronts on Route 46, which land has no access to that highway. All such buildings, except the restaurant building, are now situated on the residue of landowners' land.

Appellant contends by assignments of error, oral arguments and brief, that the trial judge erred to its prejudice in admitting a plat, identified as property owners' exhibit No. 5, showing the property as a subdivision, and in permitting landowners' witnesses to testify, again over objection, to values based upon such plat; that the trial judge erred in admitting evidence, over the commission's objection, of rentals which were currently being paid for the use of the restaurant building which was taken and of the factory building which was not taken; that the court erred in overruling the commission's motion to withdraw a juror and declare a mistrial for misconduct of landowners' counsel in interrogating on cross-examination and incorporating "within the question" an alleged sale price of a lot of land by way of comparison of its value with the appropriated land; and finally that the court erred in admitting evidence of installation costs of leaching beds servicing the restaurant building situated within the area of the lands taken.

On cross-examination landowners' expert witness Taylor testified as follows:—

"Q. Now, Mr. Taylor, in your approach to the appraisal of the Fiehler property, in your opinion what is the highest and best use to which that property can reasonably be put?

"A. Well, the highest and best use would be to sell it in lots."

On direct examination landowners' expert witness Mellinger testified:—

"Q. I am speaking now, disregarding the Turnpike, as the land is today, what is the highest and best use in your opinion as a developer of 30 years' experience?

"A. Not thinking of the Turnpike?

"Q. Not thinking of the Turnpike, what is the highest and best use?

"A. Platting it into lots."

Commission's expert witness Kroeck testified on cross-examination inter alia as follows:—

"Q. In your opinion as a real estate expert the highest and best use of this property is platting purposes?

"A. Yes.

"Q. Not acreage?

"A. Lots, yes."

On cross-examination commission's expert witness Foulk testified:—

"Q. I would ask you, Mr. Foulk, in the consideration of the Fiehler property, its highest and best use in your opinion is platting purposes; is that correct?

"A. It could be."

Commission's expert witness Summers testified on cross-examination that:—

"Q. In your opinion, Mr. Summers, what is the highest and best use that can reasonably be expected to be made of the Fiehler property?

"A. Well, I would—to get the best results with the least cost, if it was my land and the experience that I have had with others, I would sell off the frontage, at least a hundred foot front by the entire depth, thereby eliminating any cost of streets or—

"* * *

"A. —the cost of the improvements by the installation of streets and utilities and other expenses attendant on developing of the lands for lots.

"Q. In your opinion, then, it would not be practicable to install or go to the expense as a developer of putting in streets, and so forth, to enable the selling of small lots in the rear; is that correct?

"A. That's correct, I don't believe it would be economical.

"Q. And from your experience as a developer, Mr. Summers, can this land be developed as you think it could be most economically developed after the Ohio Turnpike is constructed?

"A. I would think so, yes."

There is evidence that twelve of the remaining acres of landowners' land were landlocked, and could not be subdivided. On this subject commission's expert witness Kroeck testified:—

"Q. * * * What do you propose to do with the balance of the land that is left landlocked in the corner after the Turnpike is constructed; what will the Fiehlers do with this land?

"A. Well, they could still farm it.

"* * *

"Q. Now, you said that the highest and best use to which this property can be put is platting purposes. If that is the case, isn't it logical to assume that a platter or developer is going to devise a method of plotting that will entail all the land that is available to him to plat?

"A. Yes, sir."

Also on this subject commission's witness Foulk testified:—

"Q. * * * You would sell off all the frontage on Route 46, you would

sell off all the frontage available for lots on Route 62, and you would landlock 10 to 12 acres in the back and give it a value of $200.00 an acre?

"A. That's right.

"Q. How will Mrs. Fiehler get to that property after those lots are sold off?

"A. Just by walking back to it."

Commission's witness Summers suggests that the platting would not conform with the requirements of Section IV of the Mahoning County Planning Regulations.

On the admission of land owners' exhibit number 5

"It is the contention of the appellee, the evidence as above set out, precludes any tenable argument, that the jury was mislead by the admission of Property Owners' Exhibit No. 5. The exhibit No. 5, on the contrary served to support the contentions of all expert witnesses, that platting of the land was the obvious highest and best use. Whether the jury would follow the highest and best use, as outlined by the exhibit No. 5, or on the other hand, accept the platting method as advocated by the commission's witnesses was solely within the jury's province."

By brief the commission says:—

"We are not unaware that several cases have been decided in the State of Ohio where the courts have held that it was proper to introduce into evidence in an appropriation case a plat of a proposed subdivision of land, even though the plat had not been recorded."

"It is error in an appropriation proceeding to refuse to permit the owner of the property to fix its value upon any plan most desirable to secure its sale at the best price available." **15 O. Jur., Section 159, Page 851.**

We conclude that the admission of landowners' exhibit number 5 was not so erroneous as to prejudice the rights of the commission.

There is evidence that Margaret Leach held a two year lease on the restaurant building; that the Carbonic Dispenser Corporation held a five year lease, with a renewal option for five years, on the factory building; and that the fee to the properties was held by landowner Emma Fiehler.

Thus there were several and different interests or estates in the disputed land, and under the ruling of the Supreme Court in the case **Sowers v. Schaeffer, 155 Oh St 454,** evidence of rental values was admissible in the case under review.

On this question landowners contend by brief:—

"However, the property owner contends, it is not necessary to consider the law in this claimed error by reason of the facts established in evidence.

"The appellee propounds one question. What substantial rights of the commission were effected by the introduction of rental values and assuming evidence of rental values are not properly admissible?

"Witnesses for the property owners placed a value of $1,500.00 on the restaurant building. (Taylor page 88 and Mellinger page 144). On the other hand, the appellant's witnesses placed a higher value for the restaurant. Mr. Kroeck said in his opinion, the restaurant building was

worth $1,709.00 (page 213), Mr. Summers $1,600 (page 302) and Mr. Foulk in his direct examination testified that he felt the restaurant was worth $1,944.00 (page 265). We therefore note for the court's consideration the condemnor's witnesses testified to values in excess of those claimed by the property owner.

"What was the jury's verdict as to the value of the restaurant? The jury gave $1,500.00, as compensation for the building taken. The introduction of evidence of rental income of $75.00 per month could have in no way been prejudicial to the rights of the condemnor when the jury gave an amount less than the condemnor witnesses testified to the fair value of the property, viz., the restaurant building."

Landowners contend that no error prejudicial to the commission was committed by the trial judge in the admission of evidence of the rental value of the factory building.

Only one expert witness testified to a decrease in value of the factory building.

With reference to that evidence landowners argue:—

"The facts are irrefutable that rental values even considered inadmissible could not rationally be construed as being prejudicial, when the condemnor's witnesses were the only witnesses to reflect any decrease in value by reason of the taking.

"It would be difficult indeed to claim an invasion of the appellant's substantial rights, in fact a situation wherein the property owner receiving rental for a building admits through her expert witnesses that the before and after values remain the same."

We find no error prejudicial to the commission in the respects urged in this assigned ground of error under discussion.

On cross-examination landowners' counsel incorporated in a question asked commission's witness Kroeck whether he knew of a sale for $2,000.00 of a parcel of land 75 feet by 400 feet on the Clay property situated across from the disputed land. The commission contends that landowners counsel was guilty of misconduct in asking that question of so serious a nature and so "misleading to the jury" as to make it "impossible to proceed with the case to an impartial verdict," which necessitated the trial judge granting commission's motion to withdraw a juror and declare a mistrial, even though the trial judge sustained an objection to the question as asked and notwithstanding such sale.

Landowners' expert witnesses established by their testimony that such land situated across from landowners' land was similar in character, location, and in other respects to landowners' land, and was sold in the open market.

We conclude no error prejudicial to the commission was committed by the trial judge in overruling its motion to withdraw a juror and continue the case for trial.

With reference to commission's assigned ground of error that the trial judge erred to its prejudice in admitting evidence of installation costs of leaching beds serving the restaurant building situated within the area of the lands appropriated counsel for property owners state by brief:—

"It is the contention of the property owner that by reason of the latest pronouncements of the supreme court of Ohio a burden of proof has been placed on property owners on certain types of damages resulting from the condemnation of land."

Landowners' counsel then cite:—

"In an action for the condemnation of land, the owner has the burden of proving claimed special damage to residue, such as that to underlying minerals.

"* * * It would seem that the condemnor has an opportunity to see the land to be taken and even to observe the probable ordinary damage to the residue. But special damage, such as that to underlying minerals, is a matter usually within the knowledge of the owner rather than the condemner, and there is no valid reason for excusing the owner from the burden of proving the special damage he claims." **Tennessee Gas Transmission Co. v. Wolfe et al, 159 Oh St 391 and 394.**

On this question commission's witness Kroeck on cross-examination testified:—

"Q. August the 17th. Did you know their location at that time?

"A. No—well, I still don't know their location. The only thing I do know about them is that they are in between the house and the road and between the buildings and the road.

"Q. Do you know the extent of how much is between the house and the road and the building and the road?

"A. No, sir, I don't."

Upon authority of Tennessee Gas Transmission Co. v. Wolfe et al, supra, we conclude that the trial judge did not err to the commission's prejudice in admitting evidence of the installation costs of leaching bed and septic tanks serving the restaurant building situated within the area of the appropriated lands.

We do not believe that "each of the foregoing assignments of error on its own constitute prejudicial error sufficient to warrant reversal of the judgment on the verdict rendered in this case, and that cumulatively the effect of the foregoing errors resulted in completely misleading the jury as to the measure of damages that the landowner was entitled to," as the commission urges.

The judgment of the court of common pleas is affirmed.

NICHOLS and GRIFFITH, JJ, concur.